*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHAEL W. STUTLER; KATHY STUTLER; DAVID
STUTLER,

*Plaintiffs-Appellees,*

*v.*

No. 04-6436

T.K. CONSTRUCTORS INC., an Indiana Corporation,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 03-00130—William O. Bertelsman, District Judge.

Argued: January 26, 2006

Decided and Filed: May 9, 2006

Before: SILER, BATCHELDER, and MOORE, Circuit Judges.

---

### COUNSEL

**ARGUED:** C. Gregory Schmidt, SANTEN & HUGHES, Cincinnati, Ohio, for Appellant. Robert N. Trainor, Covington, Kentucky, for Appellees. **ON BRIEF:** C. Gregory Schmidt, J. Robert Linneman, SANTEN & HUGHES, Cincinnati, Ohio, for Appellant. Robert N. Trainor, Covington, Kentucky, for Appellees.

BATCHELDER, J., delivered the opinion of the court, in which SILER, J., joined. MOORE, J. (pp. 5-6), delivered a separate opinion concurring in the judgment.

---

### OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Appellant T. K. Constructors Inc. ("T. K."), moved in the district court for an order to stay these proceedings pending arbitration. The district court denied the motion, relying on *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003) and *Cooper v. MRM Investment Co.*, 367 F.3d 493 (6th Cir. 2004). Because we conclude that the holdings in those cases do not extend to contracts requiring the mandatory arbitration of disputes regarding state law claims only, we VACATE the district court's order and REMAND the matter for disposition consistent with this opinion.

This case originated in diversity of citizenship under 28 U.S.C. § 1331. The Stutlers are residents of the Commonwealth of Kentucky, and T. K. is a resident of the State of Indiana.

Appellee, Michael Stutler, hired T. K. to build a new house, which Kathy and David Stutler used as a residence. T. K. completed the project, and the Stutlers provided T. K. with written acceptance of the workmanship. Some time later, the Stutlers noticed defects and asked T. K. to perform repairs covered by the home warranty. T. K. performed an initial inspection, but before it could begin any repairs, the Stutlers retained an attorney and filed the instant complaint.

The complaint alleges state law claims for negligent misrepresentation, breach of contract, breach of warranty, negligence, negligent hiring, negligent supervision, negligence *per se* and unjust enrichment arising out of T. K.'s construction of the house, and demands damages in excess of $100,000.

The contract entered into by T. K. and the Stutlers contains the following arbitration clause:

> Any claims or disputes arising out of this contract or the breach thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of [the] American Arbitration Association unless both parties mutually agree otherwise.

The contract also provides that if a dispute over workmanship cannot be resolved:

> Buyer and Builder agree to jointly engage the services of an independent third party inspector to resolve said disputed item(s). The costs and expenses of the independent third party inspector will be shared equally by the Buyer and the Builder and the decision of the independent third party will be binding. Said inspector shall be instructed to evaluate merits of [the] dispute solely in accordance with the terms and conditions of the Agreement.

Relying on the contract, T. K. filed a motion to stay the proceedings in the district court. Despite the contract's unambiguous arbitration clause, the district court denied T. K.'s motion, finding that the cost of arbitration would be prohibitive to the Stutlers. T. K. now appeals the district court's decision.

An order denying a motion to stay proceedings pending arbitration is immediately appealable. 9 U.S.C. § 16(a)(1)(A). We review *de novo* the district court's refusal to enforce an arbitration clause, and we review its factual findings for clear error. *Cooper*, 367 F.3d at 497.

Our disposition of this appeal is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"). Congress enacted the FAA in 1925 pursuant to its power to regulate interstate commerce "to ensure judicial enforcement of privately made agreements to arbitrate," and "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). The FAA preempts any contradictory provision of state law. *See Circuit City*, 532 U.S. at 111-12; *Conseco Financial Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001).

The FAA applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . ." 9 U.S.C. § 2. It sets forth a fundamental rule regarding enforcement of an arbitration clause: a written agreement to arbitrate shall be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* In other words, whether an arbitration clause is enforceable is governed by state law. *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) ("An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.' Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues

concerning the validity, revocability, and enforceability of contracts generally.") *See also Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("state law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'") (quoting *Doctor's Assocs., Inc.* v. *Casarotto,* 517 U.S. 681, 687 (1996)). If no such defenses apply, an arbitration clause is generally enforceable under the FAA.

The district court erred by applying federal common law rather than considering state law contract defenses. Specifically, the court relied on our holdings in *Cooper v. MRM Investment Co.* and *Morrison v. Circuit City Stores, Inc., supra*.

We clearly limited our holdings in *Morrison* and *Cooper* to the validity of arbitration clauses in employment agreements where an employee's statutorily created federal civil rights are at issue. *Morrison*, a Title VII employment discrimination case, held that an arbitration clause may be unenforceable if the cost of arbitration would undermine "the purposes of federal anti-discrimination legislation" by deterring potential claimants from pursuing their claims. 317 F.3d at 653. According to *Morrison*, the resolution of an arbitral civil rights dispute must "reconcile the liberal federal policy favoring arbitration agreements with the *important rights created and protected by federal civil rights legislation*." *Id*. at 652-53 (quotation omitted) (emphasis added). Toward that end, *Morrison* provides that "potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate *their federal statutory rights* in the arbitral forum." *Id*. at 663 (emphasis added). *Cooper*, a second Title VII employment discrimination case, also upheld a district court's refusal to enforce an arbitration clause where the cost of arbitration was prohibitive. 367 F.3d at 510-12. *Cooper* explicitly held that the objective of its cost deterrent analysis was "to serve the underlying functions of the federal statute." *Id*. at 511 (quoting *Morrison*, 317 F.3d at 663).

A third case is relevant. *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000), a predecessor to *Morrison* and *Cooper*, dealt exclusively with the arbitration of federal statutory claims. In that case, the Supreme Court held that invalidation of an arbitration agreement on the basis that arbitration was cost-prohibitive was in error where the agreement was silent as to how the plaintiff and the defendant would share the costs. *Id*. at 91-92. The Court wrote that the plaintiff in such a case bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue and that the plaintiff is likely to suffer the costs of arbitration. *Id*. at 92.

*Green Tree*, *Morrison* and *Cooper* are limited by their plain language to the question of whether an arbitration clause is enforceable where federal statutorily provided rights are affected. In this case, no federally protected interest is at stake. The Stutlers, through diversity jurisdiction, seek to enforce contractual rights provided by state law. As a result, *Morrison* and *Cooper* simply do not apply. Under the FAA, the Stutlers must look to contract defenses available in Kentucky rather than those found in federal common law.

Kentucky has a paramount interest in the enforcement of arbitration agreements. The Constitution of Kentucky provides that "[i]t shall be the duty of the General Assembly to enact such laws as shall be necessary and proper to decide differences by arbitrators, the arbitrators to be appointed by the parties who may choose that summary mode of adjustment." Ky. Const. § 250. Toward that end, Kentucky has adopted the Uniform Arbitration Act, which mirrors the FAA in several respects. *See* K.R.S. § 417.050. Furthermore, Kentucky courts take a broad view of the enforceability of arbitration agreements. *See Conseco*, 47 S.W.3d at 344 (arbitration is presumed to afford the parties "an adequate opportunity to vindicate their substantive claims" even if the arbitration clause is one-sided and the contract is one of adhesion). Kentucky law is thus entirely consistent with and complementary to the provisions of the FAA. To apply *Morrison* and *Cooper* as the district court did is, in effect, to preempt these provisions of Kentucky law, despite the lack

of any inconsistency that would permit their preemption by the FAA, and despite the explicit provision of § 2 of the FAA itself, which reserves to state law the defenses against enforcement of arbitration agreements.

Even if *Morrison* and *Cooper* were not explicitly limited to the arbitration of federal statutory rights, *Erie R. Co. v. Tompkins* forbids their application to a question governed by state law. 304 U.S. 64 (1938). *Erie* provides that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Id.* at 78. Although the FAA generally preempted states' laws that are inconsistent with the FAA, Congress explicitly preserved the applicability of state law defenses to arbitration agreements. 9 U.S.C. § 2; *Perry*, 482 U.S. at 492, n. 9. Accordingly, the Stutlers' ability to avoid their agreement with T. K. is governed by the generally applicable contract laws of the Commonwealth of Kentucky. We cannot, under *Erie*, invalidate that agreement by reference to the federal common law established by *Green Tree*, *Morrison* and *Cooper*.

Finally, if we were to flout *Erie* by extending *Green Tree, Morrison* and *Cooper* to disputes over purely state law claims, we would, in effect, limit the enforcement of arbitration agreements to situations in which all of the parties to the agreement are wealthy. This absurd result, we think, is not what Congress intended when it enacted the FAA.

Accordingly, we **VACATE** the district court's order and **REMAND** the matter for disposition consistent with this opinion.

---
**CONCURRENCE**
---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. While I do not join the majority opinion's condemnation of the district court, I agree with the majority that it was reversible error for the district court to apply the cost-deterrent defense to arbitration recognized by this court in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003) (en banc), and *Cooper v. MRM Investment Co.*, 367 F.3d 493 (6th Cir. 2004), to the state-law claims in this dispute *as a matter of federal common law*. I write separately, however, to clarify that the majority opinion's fervid rejection of the extension of the cost-deterrent defense to state-law disputes as *a matter of federal law* is immaterial to the issue of whether or not such a defense could be properly recognized *as a matter of state law*. I believe the question of whether a state court or a federal court sitting in diversity could properly recognize a cost-deterrent defense to arbitration as part of generally applicable contract-defense doctrine is a complicated question deserving of some comment.

The Federal Arbitration Act ("FAA") states that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Therefore parties may assert only general contract defenses that exist in law or equity "for the revocation of *any* contract" in order to avoid enforcement of an arbitration provision, but may not assert statutory defenses unique to arbitration clauses. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n.11 (1984) (disallowing a state statutory defense to an arbitration clause because to allow the defense "would permit states to override the declared policy requiring enforcement of arbitration agreements."). State common-law defenses unique to arbitration clauses would appear to be similarly suspect, as they too would run afoul of the FAA's goal "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). While state-law attempts specifically to undermine arbitration agreements are improper, "generally applicable state-law contract defenses[,] like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper*, 367 F.3d at 498 (citing, *inter alia*, *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)). For instance, a state might determine that in addition to having an interest in enforcing arbitration agreements, it also has an interest in ensuring that residents who can demonstrate that high arbitration costs would deter them from vindicating their common-law rights can avail themselves of generally applicable equitable contract defenses.

The Stutlers may therefore attempt to rely upon Kentucky contract defenses in support of their claim that the up-front costs of arbitration are so prohibitive to vindicating their contractual rights that they should be released from the obligation to arbitrate. For the following reasons, however, I do not believe this is an appropriate case for us to find that a generally applicable principle of state law applies to invalidate the arbitration clause. The Supreme Court of Kentucky has never considered the question of arbitration costs as a defense to arbitration, or a closely analogous question. The key question is, therefore, whether if faced with this issue, the Supreme Court of Kentucky would be likely to recognize the "cost deterrent" defense under one of its generally applicable doctrines of contract defense. *See Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000) ("Our role in this diversity of citizenship case is to make [the] best prediction, even in the absence of direct state court precedent, of what the Kentucky Supreme Court would do if it were confronted with this question.") (internal quotation marks omitted). The most closely analogous case to this one, which comes from the Kentucky Court of Appeals in *Conseco Finance Serv. Corp. v. Wilder*, 47 S.W.3d 335, 343-44 (Ky. Ct. App. 2001), is ambiguous on this specific question. We must look to *Conseco* because state court of appeals decisions constitute part of the "[r]elevant data" that a federal court must look to in predicting how

a state supreme court would decide an issue, and decisions of courts of appeals "should not be disregarded unless we are presented with persuasive data that the [Kentucky] Supreme Court would decide otherwise." *Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996).

Contrary to T.K.'s claim, I do not read *Conseco* as "[r]ejecting a party's argument of excessive cost" under *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79 (2000). Appellant Reply Br. at 13. Nor does *Conseco* explicitly approve of a *Green Tree* cost-related defense, because the parties in *Conseco* did not make such a claim. Instead, in *Conseco*, which involved the exact same arbitration clause at issue in *Green Tree*, the Kentucky Court of Appeals explained the Supreme Court's cost-related holding in *Green Tree*, and then relied upon *Green Tree's* reasoning to hold that the plaintiff's analogous contention that the arbitration clause was unconscionable must similarly be rejected on the plaintiff's existing level of proof. The *Conseco* court stated that, like the *Green Tree* plaintiff's cost-related claim, the plaintiff's argument that the arbitration clause was "unfairly one-sided rests similarly on a presumption that arbitration will not afford them an adequate opportunity to vindicate their substantive claims." *Conseco*, S.W.3d at 344. The court concluded, "Under both the FAA and Kentucky's UAA, such a presumption is not a proper basis for refusing enforcement of an arbitration clause." *Id*. Like in *Green Tree*, the Kentucky Court of Appeals required that the plaintiff meet some unspecified level of proof before the plaintiff could be relieved of the duty to arbitrate. The *Conseco* court continued:

> Should it transpire, however, that the unspecified details of Conseco's arbitration procedure prevent or unfairly hinder the [plaintiffs] from meaningfully presenting their case, the arbitration clause consigning them to that procedure would appear in a different light. In that event, our ruling today would not preclude the [plaintiffs] from renewing their objection to the arbitration clause in circuit court on the ground that the clause had proved unconscionable in practice. On the record before us, however, there is no basis for such a conclusion.

*Id*. Thus at the same time that *Conseco* rejected the attempt to avoid an arbitration clause based on a mere presumption of unconscionability, *Conseco* implied that Kentucky law might allow a plaintiff who believes that the costs of arbitration "prevent or unfairly hinder" them from making a meaningful presentation of their claims to attack the arbitration clause either pre- or post-arbitration *if* that plaintiff can meet some level of proof about the hindrance caused by the costs of the arbitration procedure. While I therefore believe that *Conseco* leaves the door open to the possibility of recognizing a cost-related claim of unconscionability, the ambiguity of Kentucky law makes this an inappropriate case in which to conclude that generally applicable state law invalidates the arbitration clause because of the Stutlers' cost-related concerns. I concur in the judgment.