**AMERICAN GENERAL HOME EQUITY, INC., Appellant**

v.

**Teresa KESTEL, Appellee.**

No. 2006–SC–000830–DG.

Supreme Court of Kentucky.

May 22, 2008.

John E. Spainhour, Jr., Givhan & Spainhour, PSC, Shepherdsville, KY, Counsel for Amicus Curiae, Kentucky Justice Association.

Opinion of the Court by Justice MINTON.

## I. *INTRODUCTION.*

American General Home Equity, Inc., filed a mortgage foreclosure action in circuit court against Teresa Kestel. Kestel counterclaimed, asserting fraud and federal and state statutory claims under the Truth in Lending Act and the Kentucky Consumer Protection Act. The trial court denied American General's motion to compel arbitration on Kestel's counterclaims, finding that no arbitration agreement existed between American General and Kestel. A majority of the Court of Appeals panel hearing the case on appeal disagreed with the trial court about the absence of an arbitration agreement; but the panel upheld the denial of American General's motion to compel arbitration anyway, holding, instead, that American General had waived its arbitration rights through its "nine-month delay in moving for arbitration" following the filing of Kestel's counterclaims.

We granted discretionary review in order to provide guidance to courts and counsel concerning when a party's litigation conduct amounts to an implied waiver of its rights to enforce a contractual right to arbitration. Because we conclude that American General's litigation conduct at issue here was not clearly inconsistent with asserting contractual arbitration rights and that the Court of Appeals erred in determining that American General waived its arbitration rights, we reverse and remand to the trial court for proceedings consistent with this opinion. Our ruling here leaves open on remand the possi-

Bethany A. Breetz, Matthew W. Breetz, Stites & Harbison, PLLC, Louisville, KY, Clark Philip Case, Stites & Harbison, PLLC, Lexington, KY, Counsel for Appellant.

Katherine S. Sanford, Katherine Yunker, Oran Shepherd McFarlan, III, Yunker & Associates, Lexington, KY, Counsel for Appellee.

bility that Kestel may, by proper motion, raise her contention that application of the arbitration provisions could, by cost or otherwise, deprive her of an adequate opportunity to present her claims and defenses.

## II. FACTS AND PROCEDURAL BACKGROUND.

On October 31, 2001, John Kestel, the husband of Teresa Kestel, signed a promissory note with American General in Lexington, Kentucky, in the principal amount of $46,701.00. Teresa Kestel was not identified as a borrower on this note, which we will call the October note in this opinion; and she did not sign her name to this note. To secure the debt described in the October note, both John and Teresa signed two real estate mortgage instruments: one encumbering their residence in Lexington and a second encumbering land in Mercer County that Teresa owned individually.

Less than two weeks later, on November 13, 2001, Teresa signed and delivered to American General her separate promissory note in the principal amount of $5,061.21 in consideration for another loan. This note, which we will call the November note in this opinion, contained wording to the effect that either American General or the borrower could elect to have a broad range of disputes called "Covered Claims" submitted to binding arbitration, "even if there is a pending or completed judicial action (up to final judgment and settlement)." "Covered Claims" were defined as including "without limitation, all claims and disputes arising out of, in connection with, or relating to your loan today or any previous loan from Lender" and "all documents, actions, or omissions relating to this or any previous loan." According to the arbitration provisions in the November note, covered claims also included "whether the claim or dispute must be arbitrated; the validity of the Arbitration Provisions, your understanding of them, or any defenses to the enforceability of the Loan Agreement." Lastly, the arbitration provisions in the November note specifically listed as "covered claims" that could be submitted to arbitration: any fraud or misrepresentation claims, any claims under federal or state statutes or rules, any contract or tort claims, and any claim for injunctive or equitable relief.

John Kestel defaulted on his obligations under the October note, so American General sued him and Teresa in Fayette Circuit Court and in Mercer Circuit Court to foreclose the two mortgages securing the October note. The Mercer Circuit Court foreclosure was filed in late October 2003, two days after the Fayette Circuit case. When Teresa Kestel defaulted on the November note, American General filed a separate action against her in Fayette Circuit Court to collect on that note.

In January 2004, Teresa Kestel filed an answer and counterclaim against American General in the Mercer Circuit action, alleging fraud and federal and state statutory claims under the Truth in Lending Act and the Kentucky Consumer Protection Act. American General immediately filed a motion for an extension of time to answer the counterclaim, stating it was evaluating its affirmative defenses, "including the right to insist upon arbitration as provided in the loan documents." American General filed its answer in Mercer Circuit Court in late February 2004, raising arbitration as an affirmative defense to the counterclaim.

Within a week of American General's answer, Teresa Kestel moved for partial summary judgment, claiming that the October note had been rescinded. No discovery had occurred at that point. Then, in mid-March 2004, Teresa Kestel moved to strike American General's arbitration defenses, stating she had not signed the October note. In response to Teresa Kestel's

motion to strike, American General pointed to the November note, arguing that she had agreed to arbitrate any disputes and that the arbitration provisions in the November note applied to the dispute arising out of the October note.[1] It also indicated in the response to the summary judgment motion that the motion was premature because of the possibility of arbitration and the complete lack of discovery. American General filed these responses in mid-April 2004.

Although the trial court ruled from the bench at a hearing in April 2004 that it would grant Kestel's motion to strike the arbitration defenses based on its finding that the arbitration clause in the November note did apply to the dispute over the October note, the trial court did not enter a written order to this effect until August 2004. Meanwhile, the trial court issued a written order denying Kestel's motion for partial summary judgment in late July 2004.

In early November 2004, Kestel made her first discovery requests to American General. About three weeks later, American General moved to compel arbitration and to stay the Mercer Circuit Court action. Among her arguments in response to arbitration, Kestel countered that the arbitration provisions in the November note were not applicable to her and, alternatively, that American General had waived its arbitration rights through its litigation conduct.

■ In mid-December, the trial court conducted a hearing on American General's motion to compel arbitration and ruled from the bench that the arbitration provisions of the November note did not apply to Kestel's counterclaim because her counterclaim stemmed from the October 2001 loan transaction. The trial court issued a written order denying the motion to compel arbitration in January 2005 but did not state any grounds for its ruling in its written order. American General then filed a timely appeal to the Court of Appeals,[2] which affirmed the trial court on the alternative ground of litigation-conduct waiver. The majority disagreed with the trial court's finding that the arbitration provisions were not applicable.

American General sought and was granted discretionary review in this Court of the Court of Appeals decision. Kestel did not file a protective cross-appeal concerning the Court of Appeals ruling on the applicability of the arbitration provisions.

### III. *ANALYSIS.*

#### A. *Applicability of Arbitration Agreement Is Law of the Case.*

■ We begin our analysis by acknowledging that the question of whether the arbitration provisions in the November note applied to this dispute—an issue that both lower courts reached but decided in different ways—is not before us. Whether rightly or wrongly, the Court of Appeals decided that the arbitration agreement in the November note applied to this dispute, which arose out of the October note se-

---

1. Meanwhile, John Kestel had failed to file an answer or other pleading in Mercer Circuit Court so American General moved for default judgment against him. After Teresa served notice of John's death in late March, the trial court declined to enter default judgment against John Kestel.

2. Meanwhile, the Fayette Circuit Court had entered orders compelling arbitration in the

Fayette County foreclosure actions in which Teresa, apparently, made similar counterclaims. Unlike an order denying a motion to compel arbitration that is explicitly held to be appealable under KRS 417.220(1)(a), an order compelling arbitration is not immediately appealable. *Fayette County Farm Bureau Federation v. Martin*, 758 S.W.2d 713, 714 (Ky.App.1998).

cured by the mortgage on Kestel's Mercer County property. That ruling is now the law of the case because Kestel did not file a cross-motion for discretionary review in this Court of the adverse ruling by the Court of Appeals.[3]

Kestel argues that we should revisit the issue to avoid a misleading application of the law despite her failure to file a cross-motion. She cites *Mitchell v. Hadl*.[4] But *Mitchell* makes clear that ignoring a failure to cross-appeal is outside the normal procedure and appropriate only on "rare occasions."[5] And *Mitchell* involved the court's deciding the case on the question of the defendant physician's duty, an issue never litigated by the parties in that case, rather than ruling on whether physical contact was required, which was the issue actually resolved by the lower courts. In contrast, in the instant case, Kestel was clearly aware of the arbitration provision applicability issue because she argued it both to the trial court and in the Court of Appeals; but she chose not to challenge the Court of Appeals' adverse finding through a cross-appeal. So we do not

believe we should violate the law-of-the-case principle to reach Kestel's issue.[6]

We will not address the applicability of the arbitration agreement in the November note further in this opinion.[7] Instead, we will focus solely on whether the Court of Appeals erred in its determination that American General impliedly waived its rights to compel arbitration rights and whether any further proceedings must take place in the Mercer Circuit Court.

B. *Court of Appeals Was Not Precluded From Considering Issue of Waiver by Kestel's Failure to Raise This Issue Through Prehearing Statement.*

■ American General argues that the Court of Appeals erred by considering the issue of litigation-conduct waiver because Kestel had failed to file a supplemental prehearing statement requesting review of that particular issue. We must disagree with American General's argument here, which misconstrues CR 76.03 governing the Court of Appeals' requirements on prehearing conferences and prehearing statements. Apparently, the Court of Ap-

---

**3.** *See, e.g., Williamson v. Commonwealth*, 767 S.W.2d 323, 326 (Ky.1989) (stating that party must challenge adverse court ruling in some manner, such as moving for discretionary review on that issue, or be bound by the court's decision). *See also* Kentucky Rules of Civil Procedure (CR) 76.21 ("If a motion for discretionary review is granted, the respondent shall then be permitted ten days thereafter in which to file a cross motion for discretionary review designating issues raised in the original appeal which are not included in the motion for discretionary review but which should be considered in reviewing the appeal in order to properly dispose of the case.").

**4.** 816 S.W.2d 183, 185 (Ky.1991) ("When the facts reveal a fundamental basis for decision not presented by the parties, it is our duty to address the issue to avoid a misleading application of the law.").

**5.** *Id.*

**6.** *See Bayless v. Boyer*, 180 S.W.3d 439 (Ky. 2005) ("The Appellants' reliance on *Mitchell*, wherein the Court decided the case on a unique legal theory that was not addressed by any party, is clearly misplaced. Appellants do not, indeed cannot, claim that the trial court took any action preventing them from raising the issue of expert witness compensation.... Had Appellants wished to introduce the testimony, they could, and should, have raised the issue at trial. As such, there is no doubt that Appellants' decision to forego the issue was unquestionably their own. Such a mistake in judgment, even one that is arguably understandable, provides no basis for reversal.").

**7.** Because we hold that the applicability of the November note arbitration provisions is now law of the case, it is not necessary for us to reach American General's argument that Teresa Kestel is equitably estopped from arguing the applicability of arbitration provisions in the October note signed by her husband.

peals also rejected American General's argument because it affirmed the trial court's ruling on the grounds of litigation-conduct waiver in the face of American General's same argument that Kestel's failure to raise the litigation-conduct waiver issue in a prehearing statement barred consideration of the argument.

The Court of Appeals did not err in interpreting its own rule of practice concerning the prehearing statement. CR 76.03 mandates that an appellant (or cross-appellant)—the party appealing the judgment or order—"shall file ... a prehearing statement" including identification of "issues proposed to be raised on appeal...."[8] On the other hand, an appellee—the party not challenging the judgment or order—is not necessarily required to but "may file ... a supplemental statement containing any other information needed to clarify the issues on appeal and on cross-appeal...."[9]

CR 76.03 further states that:

(8) A party shall be limited on appeal to issues in the prehearing statement except that when good cause is shown the appellate court may permit additional issues to be submitted upon timely motion.

We believe that the significance of this rule is that the Court of Appeals will not consider arguments to reverse a judgment that have not been raised in the prehearing statement or on timely motion. After all, the issues on appeal are the issues used to challenge the trial court's judgment.

We recognize that the Court of Appeals has applied CR 76.03(8) to bar consideration of an appellant's arguments for reversal that were not raised in a prehearing statement or by timely motion.[10] But considering the settled principle that an appellate court has authority to affirm a trial court judgment, based on different grounds[11] and the lack of requirement that an appellee file a prehearing statement under CR 76.03, we think it is clear that CR 76.03 does not prohibit the Court of Appeals from affirming a judgment on grounds that the appellee failed to raise in a prehearing statement.

So Kestel's failure to identify the litigation-conduct waiver issue in a prehearing statement or by a timely motion did not prevent the Court of Appeals from taking up that issue as an alternate ground for affirming the trial court's denial of the motion to compel arbitration. And we note that both parties briefed the issue of litigation-conduct waiver in the trial court in connection with American General's motion to compel arbitration; although, the trial court's written order denying the motion did not state specific grounds, and it orally stated at the hearing only that it was denying the motion based on lack of applicability. Kestel also briefed the litigation-waiver issue in the Court of Appeals. American General argued to the Court of Appeals in its reply brief that the panel could not consider the waiver issue because it was not raised in a prehearing statement or by motion and did not ad-

---

8. CR 76.03(4)(h).

9. CR 76.03(6).

10. *Sallee v. Sallee,* 142 S.W.3d 697, 698 (Ky. App.2004) (refusing to reach appellant's argument to reverse trial court's judgment on maintenance that was not among issues (such as child support) raised in prehearing statement or by timely motion under CR 76.03(8)).

11. *See, e.g., Fischer v. Fischer,* 197 S.W.3d 98, 103 (Ky.2006) ("Appellee's failure to raise the issue in the Court of Appeals does not prevent Appellant from presenting it here as he had no duty to present it to the Court of Appeals since he defended the trial court decision and it had to be affirmed if it was sustainable on any basis.").

dress the merits of the litigation-conduct waiver issue in its reply brief to the Court of Appeals.[12] In summary, we hold that the Court of Appeals has the discretion to address an issue that the appellee did not raise by prehearing statement if it so chooses.

### C. State and Federal Law Consistent Regarding Enforcement of Arbitration Rights.

Having disposed of these preliminary matters, we now reach the merits of the most significant issues presented to us in this case: (1) whether the question of litigation-conduct waiver of arbitration rights must be decided by courts or by arbitrators; (2) whether the Court of Appeals erred in finding litigation-conduct waiver; and, if so, (3) whether any further proceedings in circuit court are necessary. In considering these issues, we note that the arbitration agreement at hand contains

a provision stating that the Federal Arbitration Act (FAA) applies rather than state law: "[t]he Federal Arbitration Act, not state arbitration laws or procedures, applies to and governs the Arbitration Provisions." Whether state or federal law governs makes little practical difference, however, because the Kentucky Uniform Arbitration Act (KUAA) contained in Kentucky Revised Statutes (KRS) Chapter 417 is similar to and has been construed consistently with the FAA.[13] Furthermore, both the FAA and KUAA state that arbitration agreements must be enforced unless valid grounds for revoking any contract are established.[14]

### D. Whether American General Waived Its Arbitration Rights Through Its Litigation Conduct Is a Matter to Be Decided By Courts, Not Arbitrators.

 American General further takes issue with the Court of Appeals considering

---

**12.** American General did, however, take issue with the Court of Appeals' finding of litigation-conduct waiver in its Petition for Rehearing before the Court of Appeals.

**13.** "[W]e have interpreted the KUAA [Kentucky Uniform Arbitration Act] consistent with the FAA...." *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky.2004). *See also Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343, 346 (6th Cir. (Ky.) 2006) ("Kentucky has adopted the Uniform Arbitration Act, which mirrors the FAA in several respects. Furthermore, Kentucky courts take a broad view of the enforceability of arbitration agreements.... Kentucky law is thus entirely consistent with and complementary to the provisions of the FAA.") (citations omitted.).

**14.** 9 U.S.C. § 2 provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy

arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Naturally, as contract law is generally established as a matter of state law, state law governing contracts comes into play even when applying the FAA. *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ("An agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law ... save upon such grounds as exist at law or in equity for the revocation of any contract. Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (citations and internal quotation marks omitted).

KRS 417.050 provides that with certain exceptions not relevant to the case at hand: "A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract."

litigation-conduct waiver by arguing that arbitrators rather than courts should resolve issues of whether rights under an otherwise binding agreement to arbitrate have been waived through a party's litigation conduct. In other words, American General contends that having found a binding agreement to arbitrate, the Court of Appeals should have refrained from considering the issue of litigation-conduct waiver but simply reversed the trial court's judgment with directions to send the case to an arbitrator to decide whether litigation-conduct waiver occurred. It contends that federal court decisions construing the FAA require that arbitrators decide whether waiver should be implied based on litigation conduct. We reject American General's argument on this point because, even reviewing pertinent federal cases, we find little support for American General's interpretation of federal cases as mandating that litigation-conduct waiver must be decided by an arbitrator.

American General cites the United States Supreme Court decision in the *Howsam* case,[15] which states in dicta that generally questions of waiver are presumed to be issues for the arbitrator rather than a court.[16] But *Howsam* did not actually reach the question of litigation-conduct waiver. Rather *Howsam* focused upon whether a party waived its arbitration rights by not complying with a contractual time limitation for asserting arbitration.[17] Some federal courts have applied *Howsam's* dicta to conclude that litigation-conduct waiver must be decided by arbitrators,[18] while other federal courts have continued to decide litigation-conduct waiver issues themselves even after *Howsam*.[19]

■ Given this divergence of federal of authority, we conclude that courts should generally resolve issues of litigation-conduct waiver.[20] Questions of litigation-con-

15. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

16. *Id.*, 537 U.S. at 84, 123 S.Ct. 588 *citing Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). ("So, too, the presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability.") (quotation marks omitted.).

17. *Howsam*, 537 U.S. at 81, 123 S.Ct. 588. ("This case focuses upon an arbitration rule of the National Association of Securities Dealers (NASD). The rule states that no dispute 'shall be eligible for submission to arbitration . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute.' NASD Code of Arbitration Procedure § 10304 (1984) (NASD Code or Code). We must decide whether a court or an NASD arbitrator should apply the rule to the underlying controversy. We conclude that the matter is for the arbitrator.").

18. *See* David LeFevre, Note, *Whose Finding is it Anyway? The Division of Labor Between Courts and Arbitrators with Respect to Waiver*, 2006 J.Disp.Resol. 305, 311–12, *citing Nat'l*

*Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462 (8th Cir.2003) and *Bellevue Drug Co. v. Advance PCS*, 333 F.Supp.2d 318 (E.D.Pa.2004).

19. LeFevre, 2006 J.Disp.Resol. at 312–13, *citing Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed.App. 462, 464 (5th Cir. 2003) and *Marie v. Allied Home Mortgage Co.*, 402 F.3d 1 (1st Cir.2005).

20. Although we are unaware of any opinion by the Sixth Circuit Court of Appeals regarding whether litigation-conduct waiver should be resolved by courts or by arbitrators, we note that at least two lower courts in the Sixth Circuit have indicated in unpublished opinions that such questions should be resolved by the courts. *See Francis v. Nami Resources Co., LLC*, (NO. CIV.A.04–510), 2007 WL 3046061 at * 4 (E.D.Ky. Oct.16, 2007) ("In addition, neither party has disputed that the waiver issue should be decided by the court as opposed to the arbitrator. In accordance with the First Circuit's analysis in *Marie v. Allied Home Mort. Corp.*, 402 F.3d 1, 11–15 (1st Cir.2005), the court finds the waiver issue is for this court to decide"); *Konica*

duct waiver are best resolved by a court [21] that "has inherent power to control its docket and to prevent abuse in its proceedings (i.e. forum shopping)," which has "more expertise in recognizing such abuses, and in controlling . . . them," and which could most efficiently and economically decide the issue as "where the issue is waiver due to litigation activity, by its nature the possibility of litigation remains, and referring the question to an arbitrator would be an additional, unnecessary step." [22] So we hold that questions of whether a party's litigation conduct amounts to a waiver of its arbitration rights are generally issues for courts, not arbitrators.

We leave open the possibility that the presumption that courts decide issues of litigation-conduct waiver might be rebutted in certain circumstances, such as where an arbitration agreement between sophisticated parties explicitly provides that arbitrators will decide questions of whether arbitration rights have been waived by inconsistent litigation conduct. American General, citing a portion of the Arbitration Agreement that defines a "covered claim" subject to arbitration as including "any defenses as to the enforceability of the Loan Agreement or the Arbitration Provisions," asserts that the contract provides for the arbitrator to decide litigation-conduct waiver. Nevertheless, we decline to decide today whether this contractual language is sufficient to rebut the presumption that the issue of litigation conduct waiver should be resolved by the

*Minolta Business Solutions, U.S.A., Inc. v. Allied Office Products, Inc.*, (NO. 206–CV–71), 2006 WL 3827461 at *10 (S.D.Ohio Dec. 27, 2006) (holding that question of litigation-conduct waiver was for court to decide, *citing Marie*, 402 F.3d at 11–15, with approval).

Although Kentucky has not adopted the Revised Uniform Arbitration Act of 2000 and although the contract states in any case that the FAA applies rather than any state arbitration law, comment 5 to Section 6 of the Revised Uniform Arbitration Act (2000) further strengthens our conclusion that generally speaking, courts should decide questions of litigation-conduct waiver:

"Waiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause. . . . Allowing the court to decide this issue [litigation-conduct waiver] of arbitrability comports with the separability doctrine because in most instances waiver concerns only the arbitration clause itself and not an attack on the underlying contract. It is also a matter of judicial economy to require that a party, who pursues an action in a court proceeding but later claims arbitrability, be held to a decision of the court on waiver." (citations omitted).

21. We do not reach the question of whether courts or arbitrators must decide questions of other types of waiver, such as failure to comply with contractual time limitations for demanding arbitration. We note that the Court of Appeals previously held that arbitrators must decide a question of whether arbitration was timely demanded where the contract required that such demand be made within a reasonable time within the applicable statute of limitations and where the only litigation conduct of the party seeking arbitration was to file an action for an order enjoining the other party to participate in arbitration. *See The Beyt, Rish, Robbins Group, Architects v. Appalachian Regional Healthcare, Inc.*, 854 S.W.2d 784, 786 (Ky.App.1993). That case did not present the question of whether arbitration rights had been waived through inconsistent conduct in litigation but, rather, a question of pure delay in demanding arbitration outside of court.

22. LeFevre, 2006 J.Disp.Resol. at 313–14, *citing Marie*, 402 F.3d at 11–17. We also note that although the Court of Appeals did not expressly reach the question of whether a court or arbitrator should decide whether a party's litigation conduct constituted a waiver of its arbitration rights, the Court of Appeals itself decided that the party's litigation conduct did not constitute waiver (instead of delegating that question to an arbitrator) while reversing the trial court's decision not to compel arbitration on the basis of unconscionability in *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344–45 (Ky.App.2001).

courts because that issue has not been briefed by the parties; and it is not necessary for resolution of this case.

### E. Court of Appeals Incorrectly Concluded That American General Waived its Arbitration Rights By Implication through its Litigation Conduct.

While we find nothing improper in the Court of Appeals reaching the issue of waiver by litigation conduct, we hold that the Court of Appeals incorrectly concluded that American General had waived its arbitration rights through its litigation conduct. Because we are essentially reviewing the Court of Appeals' application of the law to facts,[23] we review its decision under a de novo standard.[24] In the present case, the litigation-conduct issue boils down to American General's (1) delaying for several months a motion to compel arbitration after giving notice in pleadings of the possibility of arbitration of arbitrable claims and (2) defending motions filed in the circuit court by its party-opponent after the party-opponent was on notice of the possibility of arbitration. While American General's litigation conduct does not demonstrate a prompt and decisive invocation of arbitration rights, its conduct is not clearly inconsistent with an intent to seek arbitration. And we hold that the Court of Appeals erred when it implied waiver by conduct.

In our view, the Court of Appeals erred in the manner in which it distinguished the facts in the present case from its own published precedent in *Conseco*, which addressed the issue of litigation-conduct waiver by focusing properly on the key inquiry of whether the litigation conduct at issue was so inconsistent with asserting arbitration rights that a waiver of such rights should be implied.[25] *Conseco* acknowledged the split in authority regarding whether prejudice must be demonstrated to find such waiver by litigation conduct, but it declined to decide the issue as unnecessary to the resolution of the case.[26] Similarly, in the instant case, we focus our inquiry on whether American General's litigation conduct was truly inconsistent with asserting its arbitration rights. And we conclude that it was not. So we do not find it necessary under the facts of this case to decide whether prejudice must be shown.

Waiver has generally been defined under Kentucky law as "a voluntary and intentional surrender ... of a known

---

**23.** Although the trial court did not make factual findings as to waiver, the relevant facts of this case (*i.e.*, the litigation conduct that occurred) are clearly established in the trial court record.

**24.** *See Cummings v. Commonwealth*, 226 S.W.3d 62, 65 (Ky.2007) (application of law to facts is reviewed de novo although factual findings of trial court are subject to clearly erroneous standard). *See also Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 534 (Tex.App. 2007) (stating that trial court's determination of whether arbitration rights had been waived by implication through inconsistent conduct was subject to de novo review); *O.J. Distributing, Inc. v. Hornell Brewing Co. Inc.*, 340 F.3d 345, 355 (6th Cir.2003) (in case involving issue of whether arbitration rights had been waived by implication through inconsistent conduct, "[t]his Court reviews a district court's determination as to the arbitrability of a matter de novo"); *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir.1998) (stating in case where waiver through litigation conduct alleged, "[w]e review the district court's determination that a party has waived arbitration de novo, although the factual findings upon which it bases its determination are reviewed for clear error.").

**25.** *Conseco*, 47 S.W.3d at 344–45.

**26.** *Id.* at 345.

right...." [27] "A waiver may be express or implied, although waiver [of arbitration rights] will not be inferred lightly." [28] Because American General did not expressly waive its arbitration rights and it clearly was aware of its arbitration rights, we must consider whether waiver could be inferred from American General's litigation conduct.[29] In short, our focus is upon whether American General's actions were inconsistent with an intent to exercise its arbitration rights.[30] Having thoroughly reviewed the record, we find no indication that American General's conduct in litigation was clearly inconsistent with an intent to exercise its arbitration rights.

As Kestel concedes, American General's filing of the foreclosure action in circuit court by itself cannot constitute waiver of its arbitration rights since Kentucky is a judicial foreclosure state requiring the filing of a circuit court action to pursue foreclosure as a remedy.[31] Naturally, in other types of disputes where the filing of a court action is not necessary to obtain the desired relief, the filing of a court action itself might be inconsistent with asserting arbitration rights.

The Court of Appeals found litigation-conduct waiver based on the passage of several months between Kestel's asserting her counterclaims and American General's filing its motion to compel and based on the fact that the parties engaged in "substantial litigation activity" in those intervening months. But the Court of Appeals failed to point out that American General gave notice early and often that in its view, it at least potentially had the right to pursue arbitration and might choose to do so. Before filing its answer to Kestel's counterclaim, American General requested additional response time, stating that it needed time to investigate whether it would be asserting affirmative defenses such as arbitration. Its answer to the counterclaim cited arbitration in Affirmative Defenses 7 and 8.[32] Then, even as the parties litigated Kestel's motion for partial summary judgment and her motion to strike the arbitration defenses, American General continued to mention in its responses that the case at least "may be subject to arbitration." And although we certainly take note that three months elapsed between the trial court's entering its written order striking arbitration defenses and the filing of the motion to compel arbitration,[33] the record reveals that

**27.** *Id.* at 344, *quoting Greathouse v. Shreve,* 891 S.W.2d 387, 390 (Ky.1995).

**28.** *Conseco,* 47 S.W.3d at 344, *citing Valley Construction Company. Inc. v. Perry Host Management Company, Inc.,* 796 S.W.2d 365 (Ky.App.1990).

**29.** *Conseco,* 47 S.W.3d at 344.

**30.** *See Harris Bros. Constr. v. Crider,* 497 S.W.2d 731, 733 (Ky.1973) ("On the question of waiver we find the general authority to be that a waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right.").

**31.** KRS 452.400 provides that:

> Actions must be brought in the county in which the subject of the action, or some part thereof, is situated:
> ....
> (3) For the sale of real property under a mortgage, lien, or other encumbrance or charge, except for debts of a decedent....

**32.** "[T]he filing of an affirmative defense is not to be taken lightly. A timely defense serves notice on plaintiffs, eliminates the element of surprise from litigation, and allows the opposing party an opportunity to argue against it." *Rodriguez Font v. Paine Webber Inc.,* 649 F.Supp. 462, 467 (D.Puerto Rico 1986).

**33.** The Court of Appeals mentions in its opinion the fact that American General did not respond to Kestel's litigation-conduct waiver

nothing further occurred on the court's docket until Kestel propounded her first discovery requests in early November, which was relatively quickly followed by the motion to compel arbitration.[34]

Kestel argues that American General's delay in filing its motion to compel arbitration after the filing of her counterclaims and its engaging in litigation activity occurring during the delay, including the litigation of her motion to strike its arbitration defenses and her motion for partial summary judgment, constitute action inconsistent with its right to pursue arbitration. But we note that after filing the initial foreclosure action, American General limited itself to defending against Kestel's motions for partial summary judgment and to strike arbitration defenses, always stating at least a possibility that it might seek arbitration.[35] The Court of Appeals, in finding litigation-conduct waiver based on the delay in asserting arbitration and the "substantial litigation activity" that occurred in the intervening months,

effectively ignores the defensive stance of American General in that "litigation activity." However, similar to the Court of Appeals' analysis in *Conseco*, we find no indication that the litigation activity that occurred in the case at hand "was for the purpose of gaining or had the effect of conferring any tactical advantage" over Kestel's defenses and counterclaims.[36]

Kestel points out that American General did not demand arbitration when responding to her motions for partial summary judgment and to strike arbitration defenses. However, there was no requirement that American General immediately demand arbitration.[37] Although American General did not clearly and unequivocally seek arbitration for some time, we cannot say that their actions in litigation were clearly inconsistent with seeking to enforce their right to demand arbitration as would be the case if American General had, for example, sought discovery from Kestel or itself filed dispositive motions against her,[38] rather than simply responding to the

argument with any explanation for the delay in its reply brief. We further note that no real explanation for the delay was given at oral argument before this Court other than waiting on resolution of the motion to strike arbitration defenses (which was granted by written order three months before the motion to compel arbitration was filed), even though American General clearly was aware of the existence of the arbitration agreement very shortly after Kestel filed her counterclaims.

34. Amicus Curiae, The Kentucky Justice Association, suggests in its brief that arbitration procedures, which "deny discovery", finally motivated the filing of the motion to compel arbitration. And we are aware that some courts are more apt to find litigation-conduct waiver once discovery has commenced. In any case, whatever their motivation, American General's conduct was not inconsistent with intent to exercise arbitration rights since they did not, in fact, agree to discovery before seeking to compel arbitration.

35. Naturally, in other cases where the party seeking arbitration has not given notice of a possible arbitration defense and/or has defended numerous motions filed by the other party without continuing to assert the possibility of arbitration, the fact that his actions have been solely defensive might not always defeat claims of waiver.

36. *Conseco*, 47 S.W.3d at 345.

37. We are aware of no statutory, contractual, or other particular time limit for bringing the motion to compel arbitration in the instant case. Kestel's Motion to Strike Arbitration Defenses was a tactical attempt to force the resolution of the issue of arbitration quickly.

38. We recognize that American General did file a motion for default judgment against John Kestel on the Mercer Circuit Court foreclosure action, following his failure to file an answer. But since John Kestel had not raised any defenses or counterclaims to the foreclosure action (which had to be filed in court),

two motions she brought while giving notice that arbitration might be sought. In short, American General did nothing to avail itself of the power of the court in any offensive maneuver between the time it filed its foreclosure complaint and the time it filed its motion to compel arbitration.

■■■ It is not necessary to the resolution of this case that we decide whether prejudice must be shown because the record of the litigation conduct in this case does not reveal litigation conduct that is clearly inconsistent with asserting arbitration rights. In other words, the essence of waiver is not established. Rather, we stress that a court's task is to determine, given all the facts and circumstances of the litigation conduct that has occurred before it,[39] whether the party seeking arbitration has acted in a manner inconsistent with the intent to exercise arbitration rights such that one could reasonably infer that the party has voluntarily relinquished their arbitration rights. Because waiver is not to be lightly inferred and because the general policy of both federal law and Kentucky law is to favor arbitration where

parties have reached a valid agreement that disputes be arbitrated,[40] courts must enforce arbitration agreements where (as here) the party seeking arbitration has not engaged in litigation conduct that is clearly inconsistent with asserting their arbitration rights. We need not resolve whether prejudice must be shown to resolve this case, and we leave that question for another day. In any event, we would expect the other party to be most prejudiced where the party seeking arbitration has acted most inconsistently with a desire to resolve the dispute by arbitration rather than litigation.

### F. Kestel Is Not Precluded From Seeking A Court Hearing On Whether Arbitration Will Allow her to Vindicate her Federal Statutory Rights.

Kestel contends that she is entitled to a hearing before the trial court concerning whether she can effectively vindicate her federal statutory rights in arbitration before the trial court could stay the court action and compel arbitration.[41] Because this issue was understandably not raised in

there was simply nothing to arbitrate against him.

**39.** See *Southern Systems, Inc. v. Torrid Oven Ltd.*, 105 F.Supp.2d 848, 854 (W.D.Tenn. 2000) ("Waiver of the right to insist on arbitration may occur in several ways. Conduct such as filing responsive pleadings while not asserting a right to arbitration, filing a counterclaim, filing pretrial motions, engaging in extensive discovery, use of discovery methods unavailable in arbitration, and litigation of issues on the merit have all been considered by courts to amount to a waiver of the right to arbitration. There is no rigid rule as to what constitutes waiver of the right to arbitrate; the issue must be decided based on the circumstances of each particular case. Among factors examined by the courts in determining whether there has been a waiver of the right to arbitrate are: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) the degree of pretrial litigation; (3) the length of delay in invoking an arbitration

right and seeking a stay; (4) the proximity to the trial date; (5) whether a defendant seeking arbitration filed a counterclaim without asking for a stay; and (5)[sic] the resulting prejudice to the opposing party.") (citations omitted). We decline to establish a definitive list of individual factors to be considered but perhaps the various actions and factors mentioned in the preceding quote will provide some examples of specifics that could be taken into consideration.

**40.** *Cox*, 132 S.W.3d at 854 ("Kentucky and national policy have generally favored agreements to arbitrate.").

**41.** Kestel cites *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir.2003) and *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 385 (6th Cir.2005) for this proposition. We note that these are federal employment discrimination cases, and we express no opinion concerning their application

the trial court since Kestel prevailed there, we decline to express any opinion on it. But we see no reason why Kestel could not raise this issue in the trial court upon timely motion on remand.[42] So, rather than direct the trial court to enter an order compelling arbitration at this time, we will simply reverse and remand for proceedings consistent with this opinion.

## IV. CONCLUSION.

The Court of Appeals determination regarding the applicability of the arbitration agreement is the law of the case. Because the record does not reveal conduct in litigation that is inconsistent with an intent to exercise arbitration rights and because waiver is not to be lightly inferred, the Court of Appeals erred in finding that American General engaged in litigation-conduct waiver and in affirming the trial court on this ground. So we reverse and remand the case to the trial court for further proceedings consistent with this opinion.

All sitting, except NOBLE, J. All concur.

beyond the context of federal employment discrimination litigation. Naturally, if the issue is raised to the trial court on proper motion, the parties could brief whether Kestel is entitled to such a hearing and/or to any other appropriate relief under any applicable law.

**42.** See Conseco, 47 S.W.3d at 344 ("The Wilders' contention that their arbitration clause is unfairly one-sided rests similarly on a presumption that arbitration will not afford them an adequate opportunity to vindicate their substantive claims. Under both the FAA and Kentucky's UAA, such a presumption is not a proper basis for refusing enforcement of an arbitration clause. If arbitration will afford the Wilders essentially the same opportunity to present their warranty, CPA, and other claims as would litigation, there is no reason to believe that the agreement limiting them to arbitration is unfair. Should it transpire, however, that the unspecified details of Conseco's arbitration procedure prevent or unfairly hinder the Wilders from meaningfully presenting their case, the arbitration clause consigning them to that procedure would appear in a different light. In that event, our ruling today would not preclude the Wilders from renewing their objection to the arbitration clause in circuit court on the ground that the clause had proved unconscionable in practice. On the record before us, however, there is no basis for such a conclusion.") (citation omitted).